## THE J. DUFFY.

### UNITED STATES v. 2802 CASES SCOTCH WHISKY, ETC.

(District Court, D. Connecticut. June 29, 1926.)

Nos. 2847, 2848.

1. Navigable waters ⊂⇒2.

Waters of Long Island Sound proper are "territorial waters," and subject to municipal law.

[Ed. Note.—For other definitions, see Words and Phrases, Waters.]

2. Admiralty ⊂⇒60.

Libels of information for forfeiture are in the nature of indictments, to which, though filed in an admiralty court, the liberal rules of admiralty pleading do not apply.

3. Customs duties ⊂⇒125—Statute making smuggling offense does not apply until goods have passed a customs barrier (Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]).

Tariff Act 1922, § 593 (Comp. St. § 5841h12, 5841h13), making it a criminal offense to smuggle or clandestinely introduce merchandise into the United States with intent to defraud the revenue, does not apply until the goods have passed a customs barrier.

4. Intoxicating liquors ⊂⇒247—Conviction of master of vessel, seized while illegally transporting liquor is condition precedent to forfeiture of vessel (National Prohibition Act, tit. 2, § 26 [Comp. St. § 10138½mm]).

Under National Prohibition Act, tit. 2, § 26 (Comp. St. § 10138½mm), conviction of the person in charge of a vehicle, or the master of a vessel, seized while being used for the illegal transportation of liquor, is a condition precedent to the forfeiture of the vehicle or vessel.

5. Customs duties ⊂⇒133—In suits for forfeiture, prima facie case must be made before burden of proof is cast upon claimant (Tariff Act 1922, § 615 [Comp. St. § 5841h35]).

Under Tariff Act 1922, § 615 (Comp. St. § 5841h35), providing that in suits for forfeiture of any vessel, vehicle, or merchandise, under any law relating to collection of duties or tonnage, the burden of proof shall lie on the claimant, "provided that probable cause shall be first shown for the institution of such suit or action, to be judged of by the court," such provision cannot be invoked until a prima facie case for forfeiture has been made by evidence.

In Admiralty. Suits by the United States for forfeiture of the British schooner J. Duffy, and her cargo, consisting of certain intoxicating liquors. Libels dismissed.

Louis Halle, of New York City, for claimant.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for the United States.

THOMAS, District Judge. Two libels, one against the ship and one against the cargo, have been filed and tried together, and will be considered and determined together.

[1] The record shows that the British schooner J. Duffy cleared from Havana for St. Pierre Miquelon, on December 2, 1924, carrying a cargo of liquor. On December 20, 1924, at about 1:24 a. m., she was arrested in Long Island Sound by the Coast Guard Destroyer Downes, in command of F. W. Brown. The exact place where the arrest occurred is doubtful, and in view of the conclusions reached immaterial. I hold that the

waters of Long Island Sound proper are territorial waters and that our municipal law reaches over them.

At the time of her arrest the schooner displayed no lights, and for that reason was apprehended and ·ordered to proceed to New London. Shortly thereafter, and under orders from Commander Brown, she hove to and a boarding party from the Downes took charge. The Duffy thereafter proceeded in tow of the Downes. Neither the captain nor members of the crew were questioned at the time of the arrest. Commander Brown first met the Duffy on December 12, 1924, among the rum carriers off. Block Island.

When the boatswain of the Downes boarded the Duffy, he stumbled over some loose cases, and, on asking the captain what they contained, was informed that they contained whisky. Upon request the captain then produced the ship's papers They consisted of his clearance from Havana, his manifest, crew list, British registry, and several other papers. He explained that he was in the Sound in order to get fresh water, his own having become salted. There was some evidence that the Duffy was off her ostensible course because of distress; but this evidence is wholly unconvincing, and on this issue I would find for the libelant.

The libels originally set up five causes of forfeiture, but,. as the fourth and fifth were withdrawn at trial, we are now concerned with the first three causes only. The first cause of forfeiture charges a violation of sections 4337, 4377, and 3450 of the Revised Statutes (Comp. St. §§ 8086, 8132, 6352), sections 593 and 594 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h12–5841h14), and of section 26, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm), in that the Duffy was used in the fraudulent importation of intoxicating liquor, in the concealment, purchase, sale, and facilitation of the transportation of said liquor, and in the smuggling of said liquor.

[2] The language of the libel does not lend itself to precision in thought. No especial effort seems to have been made to marshal the allegations of fact in such a way as to have them correlate with the provisions of the statutes invoked by the libelant. While it is true that pleadings in admiralty need not have the formal precision of those at law, neverthless it must be remembered that libels of information are in the nature of indictments, and that the admiralty jurisdiction, as such, is only incidentally involved.

The significance of this comment will become more apparent when we examine some of the statutes relied upon by the libelant. Section 3450 of the Revised Statutes concerns itself entirely with the subject of internal revenue, and reads as follows:

"*Removing ·or Concealing Articles with Intent to Defraud United States of Tax; Forfeiture and Penalty.*—Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited; and in every such case all the casks, vessels, cases, or other packages whatsoever, containing, or which shall have contained, such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited."

From a reading of this section it appears that it punishes the removal, concealment, or deposit of goods with the intent to defraud the internal revenue. The words "removal," "concealment," or "deposit" are vague enough, even when applied to commodities originating within our exterior boundaries. Whatever their significance may be, they are patently inapplicable to the instant case.

As the fourth and fifth causes of forfeiture were withdrawn at trial, there is no need for considering section 4337 and section 4377, under the provisions of which the fourth and fifth causes were based.

[3] Another statute relied upon to support these libels is section 593 of the Tariff Act of 1922, and it provides as follows:

"*Smuggling and Clandestine Importations.*—(a) If any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces, into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the custom house any false, forged, or fraudulent invoice, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $5,000, or imprisoned for any term of time not exceeding two years, or both, at the discretion of the court.

"(b) If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, ·or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,- 000 nor less than $50, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

Its companion section, 594, merely provides that, where a vessel has become subject to a penalty and is held for the payment of such penalty, it may be seized and proceeded against summarily by libel to recover the penalty. But the trouble here is that the statutes quoted and relied upon by the libelant do not apply, because the evidence shows, and I think it must be conceded, that the commodities had not passed the customs barrier at the time of the seizure of the Duffy. Under such circumstances there can be no violation of section 593, because the Supreme Court of the United States held in Keck v. United States, 172 U. S. 434, 19 S. Ct. 254, 43 L. Ed. 505, that there can be no violation of that section until the goods or commodities have actually passed beyond a customs barrier. Speaking for the court, at page 445 (19 S. Ct. 257, 258), Mr. Justice White said:

"From the first of the foregoing conclusions it follows that mere acts of concealment of merchandise on entering the waters of the United States, however preparatory they may be and however cogently they may indicate an intention of thereafter smuggling or clandestinely introducing, at best are but steps or attempts not alone in themselves constituting smuggling or clandestine introduction."

Nor do I find that any distinction can be made in this respect between paragraphs (a) and (b) of section 593. If a person cannot be said to have "smuggled," or "clandestinely introduced," merchandise into the United States until the customs barrier has been passed, he certainly cannot be said to have "imported" or "fraudulently brought" such merchandise into the United States.

[4] The only statute relied upon in these suits which I find to be germane to the case as bar is section 26, title 2, of the National Prohibition Act. That section denounces the offense of transportation. It reads as follows:

"*Officer may Take Vehicle Caught in Transporting Liquor.*—When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this title in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court. *The court upon conviction of the person so arrested* shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, shall pay all liens, according to their priorities, which are established, by intervention or otherwise at said hearing or in other proceeding brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor, and shall pay the balance of the proceeds into the Treasury of the United States as miscellaneous receipts."

It is apparent that this section provides a condition precedent to the bringing of any proceedings for confiscation. The libel must allege and the evidence must show that the master or the person in charge of the vessel has been previously convicted for a violation of that section. Such conviction is the condition precedent explicitly provided for in the statute. In the case at bar it is neither alleged, nor is there any evidence whatever in the record respecting that important and

necessary fact. The authorities support the conclusion reached. In United States v. Sagatind (D. C.) 8 F.(2d) 788, Judge A. N. Hand said, at page 789:

"In respect to a forfeiture under the Volstead Act, I find no provision, except section 26 of title 2, * * *. which relates to forfeiture, and in order to bring that section into play it is necessary to have pleaded and proved the conviction of the person in charge. No such facts have been shown, and the causes of action under this section are therefore dismissed."

This decision was later affirmed by the Circuit Court of Appeals. The same construction was given the statute in United States v. One Packard Motor Truck (D. C.) 284 F. 394, and Judge Tuttle said (page 396):

"Among the jurisdictional requisites, however, for the forfeiture of such a vehicle under the Prohibition Act, are the arrest and conviction of the person in charge of such vehicle at the time of its seizure; and as, by the government's own admission, no such person has been convicted or arrested in the present case, at least one of the necessary conditions upon which such forfeiture must be based is lacking, and, under previous decisions of this court, the truck in question cannot be forfeited under the Prohibition Act. United States v. One Buick Roadster (D. C.) 276 F. 407."

In adopting this construction I am led thereto, not only by the authorities above quoted, but by a consideration of the legislative intention, which to me seems to lie, obviously, on the surface of the statute. It must never be forgotten that penalties and forfeitures, except for proven offenses, are hostile to the spirit of our law. The very word "confiscation" has an alien ring. I do not think I am misconstruing the statute when I discover therein a legislative intent to make the conviction by a jury or a plea of guilty of the person in charge the predicate of a libel of information for the forfeiture of the res.

The court then is powerless to inquire whether, in fact, the Duffy was guilty of transporting intoxicating liquor. This condition precedent goes to the jurisdiction of the court. The power to adjudicate a libel under the Volstead Act springs into existence only *after* a conviction of the master or other person in charge of the vessel. As there are no allegations in the libels that any one in control of the Duffy was ever indicted and convicted, and as there was no attempt made at the trial to prove the fact, if it was a fact, no cause of forfeiture can be maintained under the National Prohibition Act.

The remaining cause of forfeiture need not be elaborated. It is charged that there was an unlading in violation of section 586 of the Tariff Act (Comp. St. Ann. Supp. 1923, § 5841h–5). Not a scintilla of evidence was introduced to support this allegation. As for sections 2867, 2868, and 3088 of the Revised Statutes (Comp. St. §§ 5555, 5556, 5792), these were all repealed by section 642 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841i1).

[5] Upon this record, and the facts here disclosed, the libelant takes the position that by virtue of section 615 of the Tariff Act (Comp. St. Ann. Supp. 1923, § 5841h35) it is relieved of the necessity of establishing its case and that the burden of proof is upon the claimant. That section reads:

"In all suits or actions brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, merchandise, or baggage seized for violation of any such law, the burden of proof shall be upon the defendant: Provided, that probable cause shall be first shown for the institution of such suit or action, to be judged of by the court."

I do not understand that the claim of the government finds support in that statute. If the true construction of that statute is that, in a suit to enforce a confiscation, the burden of proving his innocence lies upon the owner of the property sought to be confiscated, then I would have no hesitation in declaring that statute unconstitutional. To call such a suit dominated by such a procedural rule "due process of law" is to delete all significance of the constitutional guaranty. In civil suits, the burden of proving his case by a "fair preponderance of the evidence" lies on the plaintiff. In criminal actions the burden of proving the crime *beyond a reasonable doubt* lies on the state. Are we to understand that in suits aiming at confiscation the whole theory of our judicial procedure is reversed; that wholly irrespective of whether a libel has charged facts sufficient to constitute a cause of forfeiture, that wholly irrespective of whether a prima facie case has been presented or a case of probable cause, property stands confiscated to the government, unless the owner manages in some way to disprove something that has not even been charged or proven? The statute does not go to such lengths. It may well be that the burden of proof is shifted to the claimant when "prob-

able cause" has been sufficiently shown "to be judged by the court." I can conceive of no adequate showing of "probable cause" short of a prima facie case. Indeed the intendment of the statute, as I read it, is merely to make such a prima facie case adequate to the purpose of confiscation, unless the claimant then assumes the burden of proof. In this interpretation of the statute I find myself in accord with the language of Judge Holt in United States v. One Pearl Chain (D. C.) 139 F. 510, as expressed by him at page 511:

"In my opinion, in any case, whatever the circumstances are, if at the close of the government's case there is not, in the opinion of the court, evidence enough to go to the jury, then there was not such probable cause as to put the burden of proof upon the claimant in the suit."

Likewise in the case of Locke v. United States, 7 Cranch, 339, 3 L. Ed. 364, it was held that "'probable cause' means less than evidence which would justify condemnation. It imports a seizure made under circumstances which warrant suspicion."

However, section 615 has no application whatever to the only statute which I find germane to the facts developed at the trial, to wit, section 26, title 2, of the National Prohibition Act, because section 615 concerns itself only with suits for the forfeiture of goods seized under the provisions of any statute relating to the *collection of duties on imports* or tonnage. The Volstead Act is not that kind of a statute.

Both libels are therefore dismissed. Decree accordingly.