### THE HAZEL E. HERMAN.

Circuit Court of Appeals, Fifth Circuit.
February 13, 1928.

No. 5108.

1. Shipping ⊙⇒41—Agreement to deliver liquor transshipped at point on high seas was not charter of vessel, constituting charterer "owner pro hac vice."

Agreement to deliver liquor transshipped at point on high seas did not amount to charter of whole vessel, nor demise of ship, constituting charterer "owner pro hac vice," and putting vessel entirely in his control.

2. Customs duties ⊙⇒133(6)—Evidence showed no common control of schooner delivering liquor transshipped on high seas and boat carrying liquor to shore, subjecting schooner to forfeiture (Tariff Act 1922, tit. 4, §§ 447, 453 [19 USCA §§ 259, 266]).

Where schooner agreed to deliver liquor transshipped at point on high seas to place designated, and while still on the high seas liquor was taken off schooner by small boat, and was brought into the United States, evidence held not to show common control of schooner and small boat carrying liquor to shore, subjecting schooner to forfeiture under Tariff Act 1922, tit. 4, §§ 447, 453 (19 USCA §§ 259, 266).

Walker, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Libel by the United States against the schooner Hazel E. Herman. The libel was dismissed (19 F.[2d] 397), and the United States brings error. Affirmed.

Charles L. Redding, U. S. Atty., of Savannah, Ga.

Jacob Gazan, of Savannah, Ga., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This case comes up on a writ of error, which we will

treat as an appeal. The record supports the following conclusions as to the undisputed material facts:

The British schooner Hazel E. Herman, with a cargo of intoxicating liquor on board, was attacked by "highjackers" on the high seas on August 9, 1926, about 8 o'clock in the morning. The "highjackers" were repulsed, but the master and cook were seriously wounded. Thereafter the schooner hoisted a distress signal and proceeded in the direction of St. Augustine, Fla., and somewhere off the coast transferred the wounded master and cook to a fishing boat, which took them to a hospital in St. Augustine, Fla. The schooner then proceeded in the direction of Jacksonville under the command of the mate, and when 3½ nautical miles off St. John's Point, Fla., running without lights, at about 10 o'clock at night, she was captured by a Coast Guard cutter and was taken to Savannah.

Prior to the attack of the "highjackers" she had received 600 cases of assorted liquor owned by Satinover by transshipment from another British schooner, the Pauline B. Mosher, about 35 miles off the coast of Florida. While still on the high seas, 200 cases of alcohol and 150 cases of the whisky belonging to him were taken off her by a small boat sent out by Satinover, which liquor was brought into the United States. There had been a previous agreement between Rafuse, who represented his wife, the owner of the Herman, and Satinover, to sell her cargo to Satinover, to be paid for on delivery, but none of this liquor was delivered to the small boat sent out by Satinover.

A libel in rem was filed against the Herman in the District Court at Savannah, alleging various grounds of forfeiture of the vessel, all of which contentions were decided adversely to the government, and the libel was dismissed. The Hazel E. Herman (D. C.) 19 F.(2d) 397.

On this appeal it is insisted by the government that the Herman was under charter to Satinover, and that he was in fact the owner pro hac vice, so that both the schooner and the small boat, which removed part of her cargo, were under common control.

There is no written charter party in the record and nothing in the evidence to indicate that the Herman had been chartered by Satinover, except some disconnected statements in the testimony of Rafuse, in which he said in effect that the vessel was under the direction of the charterer for the benefit of the business he was carrying on, and he does not name Satinover as the charterer. It is plain, from an examination of all the testimony of Rafuse, that the agreement was at most a contract of affreightment to deliver the liquor transshipped at a point on the high seas, and that the place of delivery was designated by Satinover. Satinover, on cross-examination, testified to having chartered other vessels belonging to Rafuse, but nowhere states that he had chartered the Herman, and his testimony in substance is that he had nothing to do with the cargo on the Herman, except the liquor belonging to him that had been transshipped, and, perhaps, that he intended to buy the other liquor on the Herman, and pay for it on delivery, which was never accomplished.

[1] An agreement to transport liquor, such as is here shown, would not amount to a charter of the whole vessel, nor the demise of the ship, constituting the charterer the owner pro hac vice, and putting the vessel entirely in his control. U. S. v. Shea, 152 U. S. 178, 14 S. Ct. 519, 38 L. Ed. 403.

[2] We agree with the District Court that common control of the schooner and the small boat was not shown.

It is unnecessary to consider the other questions presented to the District Court, as they are not pressed on appeal. They also have been correctly decided by the District Court, and are fully discussed in the opinion above referred to.

Affirmed.

WALKER, Circuit Judge (dissenting). It seems to me that, whether the Herman was or was not formally under charter to Satinover, who from shore sent out small boats to her, into one of which intoxicating liquor was unloaded from the Herman and carried to shore, the evidence showed that by prearrangement and concerted action between Satinover and the master of the Herman that vessel was subjected to the control of Satinover for the purpose of facilitating the carriage to shore of his liquor which was aboard, and the small boat which carried liquor to shore was jointly used by Satinover and the master of the Herman for the purpose of getting liquor unloaded from the Herman and unlawfully imported into the United States, with the result of subjecting the Herman to forfeiture under sections 447 and 453 of title 4 of the Tariff Act of 1922. 42 Stat. 953, 955 (19 USCA §§ 259, 266).